IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LISA F. CZIBOR, | ) |
|     Plaintiff, | ) ) ) |
| vs. | ) No. 12 C 1678 ) ) Magistrate Judge Sidney I. Schenkier |
| MICHAEL J. ASTRUE, | ) ) |
|     Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Lisa Czibor has filed a motion seeking reversal and/or remand of a determination by the Commissioner of Social Security, Michael J. Astrue ("Commissioner"), denying her claim for Disability Insurance Benefits (doc. # 12). The Commissioner, in turn, has filed a motion seeking summary affirmance of that same determination (doc. # 14). For the reasons set forth below, the Court grants Ms. Czibor's motion to remand.

I.

We begin with the procedural history of this case. On August 25, 2008, Ms. Czibor filed a Title II application for a period of disability and disability insurance benefits, alleging a disability onset date of November 2, 2006 at the age of 43 (R. 22). The claim was initially denied on September 10, 2009 and again upon reconsideration on July 20, 2009 (*Id.*). Following Ms. Czibor's request, an Administrative Law Judge ("ALJ") conducted a hearing on September 13, 2010 (*Id.*). Ms. Czibor appeared at that hearing without the assistance of an attorney or other representative (*Id.*). On November 10, 2012, the ALJ issued a written opinion denying benefits. Ms. Czibor requested judicial review of that decision, for which this Court has jurisdiction pursuant to 42 U.S.C.

§ 405(g). Pursuant to the consent of the parties and 28 U.S.C. § 636(c), the case was reassigned to this Court on May 10, 2012 for all further proceedings, including the entry of final judgment (doc. # 11).

## II.

We now summarize the administrative record. Part A sets forth the general background, Part B summarizes the medical record, Part C summarizes the hearing testimony, and Part D addresses the ALJ's written opinion.

### A.

Ms. Czibor was born on February 28, 1967 (R. 139). She is a college graduate who has held a variety of jobs including school bus driver, TV camera operator, and insurance claim adjustor (R. 155-56). Her highest paying job was with an insurance company from September 2005 to November 2006 (*Id.*). Since leaving that position, Mr. Czibor has worked selling sports memorabilia on ebay (*Id.*). Although she was initially working five to six hours a day in that endeavor, she no longer feels well enough to post new items to her ebay store (*Id.*).

### B.

In 1985, when Ms. Czibor was 17 years old, she was diagnosed with Crohn's disease (R. 264). In 1989, she had a colostomy, which involved the surgical removal of her entire large intestine and the installation of a stoma on her abdomen to serve as the end of her digestive tract (R. 337). As of October 1, 2005, when interviewed as a new patient for the Dreyer Medical Clinic, she had undergone a total of six surgeries related to her Crohn's disease, the most recent in 1999 (R. 331, 337). In November 2005, Ms. Czibor was medicated for seven days to alleviate a sore throat thought to be related to Crohn's (R. 334, 336). The medical records indicate that Ms. Czibor frequently

complained of low energy and fatigue, which she believed were related to Crohn's. In response, her doctors prescribed thyroid tests and a sleep study, but they never concluded that Ms. Czibor's low-energy and fatigue were related to Crohn's (R. 326-328, 330-331, 333, 341).

On May 5, 2005, Ms. Czibor was diagnosed with mild chronic esophagitis and mild diffuse gastritis related to Crohn's, and was proscribed proton-pump inhibitors, a group of drugs meant to reduce gastric acid production (R. 424). In December 2008, her physician noted that Ms. Czibor suffered from on-and-off left side angular stomatitis (inflammation of the mucous lining of the mouth), which appeared to be getting worse (R. 426). Ms. Czibor also complained at that time of persistent soar throat, diarrhea, and abdominal pain (*Id.*). A February 2, 2009 medical report notes that Ms. Czibor "has been in remission of Crohn's disease for the past 10 years" and "is currently off all medications [for Crohn's] and has not had any hospitalizations or exacerbations since 1999" (R. 381- 382).

Ms. Czibor also suffers from fibromyalgia, a disorder characterized by widespread musculoskeletal pain accompanied by fatigue, sleep, memory problems, and mood issues. She was initially diagnosed in the summer of 2006, and has since been prescribed pain medications and muscle relaxants (R. 382.) She also underwent osteopathic manipulation therapy five times in 2006 (R. 320). On August 8, 2008 her physician noted somat dysfunction in her spine and rib cage with myalgia and myotis (pain and inflamation of the muscles) (R. 323). In 2007, Ms. Czibor reported that her fibromyalgia pain improved when she quit her job (R. 304).

Ms. Czibor has also received treatment since the age of 14 for depression and other mood disorders (R. 264). She has taken a variety of medications including Cymbalta, Prozac, Wellbutrin,

Serax, Celexa, Effexor, Remeron, and Restoni (R. 262, 264, 372). She was admitted for suicidal and homicidal ideation from August 14, 2001 to August 18, 2001 (R. 262, 267).

C.

Ms. Czibor's testimony at the September 15, 2010 hearing added additional information not documented in her medical files. Ms. Czibor appeared at the hearing *pro se*, and there is no dispute that she knowingly waived her right to counsel (Pl.'s Mem. at 3, *citing* R. 42).

Ms. Czibor testified that she does not regularly take medication for her Crohn's disease, but will occasionally experience "flare-ups" that necessitate medication like Prednisone or Cipro (R. 64). Ms. Czibor explained that she tries to limit her use of those medications because she understands that they put a strain on her liver (R. 65). She stated that her last flare-up was in 2009 (*Id.*). Ms Czibor explained that, between flare-ups, she would experience the following Crohn's related symptoms. She stated that she generally has to use the restroom five or six times a day, and that sometimes her colostomy bag leaks, which is embarrassing (R. 66). She also stated that the Crohn's causes her to be anemic and dehydrated (*Id.*). She also stated that she occasionally (about once a year) develops a fistula, which is a hole in the intestine, which takes anywhere from three or four weeks to two months to heal (R. 67). She stated that Crohn's makes her abdominal muscles weak and also gives her an arthritis-like condition, causing her to experience neck and back pain (R. 75). She described her Crohn's as a persistent influence in her life: something that is "always there running in the background" (R. 68).

Ms. Czibor also gave testimony concerning her fibromyalgia. She stated that she takes the prescription drug Lyrica as well as the pain killer Tramadol (R. 69-70). Ms. Czibor stated that she has good days and bad days: a good day being defined as one where she can get laundry or other

4

housework done, and a bad day being defined as one where she feels the need to sleep until noon and is in pain all day (R. 70). She also testified that she does not like to take her pain killer Tramadol because it makes her feel "stoned" and forgetful without doing much to relieve her pain (R. 70-71). She also testified that she sometimes drinks alcohol to help her muscles relax and ease the pain (R. 83).

Finally, Ms. Czibor testified regarding her depression. She stated that she takes prescription antidepressants as well as a prescription stimulant (R. 74). Ms. Czibor testified that she feels depressed and does not want to get out of bed, but the stimulant helps her wake up by 9:00 at the latest (*Id.*).

In addition, Ms. Czibor testified about other physical impairments. She stated that she suffers from Raynaud's disease, which is characterized by poor blood circulation in the fingertips and toes and causes cracking of the skin and bleeding (R. 72). Ms. Czibor testified that her fingers bleed "all the time," and she always has to wear bandages (*Id.*). She also testified about an injury that caused a tear in her right shoulder (R. 72). That injury required physical therapy and makes her shoulder feel sore. (*Id.*) It limits her ability to carry items in her right arm that are heavier than ten pounds (R. 75).

Ms. Czibor testified that she has a bachelor's degree in journalism and worked as a camera technician for local news stations (R. 59). She claimed that she was never able to stay in those jobs for long, though, because she "always had trouble standing and holding a camera steady" (R. *Id.*). She testified that she continues to have trouble with prolonged standing and walking (R. 75). She starts to get "antsy" after 20 minutes of standing, and can only sit comfortably for an hour or two

(*Id.*). Ms. Czibor testified that she has no problems cooking for herself, dressing herself, or attending to her personal hygiene (R. 77).

Ms. Czibor is married, but separated from her husband. She lives in a duplex building owned by her husband: she lives in one unit, and her husband and two children live in the other unit (R. 55). Her husband has full custody of their children, ages 13 and 15, but Ms. Czibor still sees her children regularly (*Id.*). Ms. Czibor's husband and children help her with her household chores and yard maintenance. She receives $600 from her husband each month and uses food stamps to purchase groceries (R. 58).

Ms. Czibor testified about her daily activities. She wakes up between 9:00 and 11:00 a.m., and will then watch television and try to get housework done (R. 79). She testified that she "pretty much sit[s] around," and will sometimes read or use her son's laptop for up to 45 minutes or an hour (R. 80-81). She likes to go to used book sales and buy books (*Id.*).

A vocational expert ("VE") also testified at the hearing. The ALJ asked the VE if there were jobs that a 47-year-old person with the claimant's experience and education could perform if she "could perform both the full ranges of light and sedentary work," which would not require "more than simple, routine, repetitive-type tasks with no more than occasional interaction with the general public or co-workers" (R. 87). The VE stated that such a person would not be able to return to the past work performed by Ms. Czibor, but could work as a marker, for which there are 6,000 jobs in the State of Illinois; a production assembler, for which there are 3,100 jobs in the State of Illinois; or a mail clerk, for which there are 1,650 jobs in the State of Illinois (*Id.*).

The ALJ also asked the VE whether the person would be eliminated from any of those jobs if she could no more than occasionally reach overhead with her right dominant arm (R. 88). The VE

testified that the additional limitation would have no impact on the claimant's ability to perform those jobs (*Id.*). The ALJ then asked the VE whether the person would be eliminated if she required frequent breaks, defined as a 15-minute break every hour throughout the course of an eight-hour workday, due to the side effects of medication, fatigue, and pain. The VE stated that the need for frequent breaks would eliminate all the jobs. Finally, the ALJ asked whether, even without the frequent breaks, the claimant would be eliminated if she required "constant to frequent intervention on the part of a supervisor, manager of foreman, to ensure that the individual remains on task" (R. 89). The VE testified that requirement would "essentially eliminate unskilled jobs" (*Id.*).

### D.

On November 10, 2010 the ALJ issued a written opinion denying Ms. Czibor benefits on the grounds that she is not disabled under the Social Security Act ("the Act") (R. 22-32). The ALJ found that Ms. Czibor met the insured status requirements of the Act (R. 24).

At Step1, the ALJ found that claimant had not engaged in substantial gainful activity since the alleged onset date, November 2, 2006 (*Id.*). At Step 2, the ALJ determined that Ms. Czibor's Crohn's Disease, fibromyalgia, and anxiety-related disorder were severe.

At Step 3, the ALJ found that Ms. Czibor did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (R. 25). The ALJ then found that Ms. Czibor had the residual functional capacity ("RFC") to perform light work as defined in CFR § 404.1567(b) with the following exceptions: she should no more than occasionally climb ladders, ropes, scaffolds, ramps, and stairs; balance, stoop, kneel, crouch, or crawl; and reach overhead. Additionally, the ALJ found that she

should be assigned no more than simple, routine, repetitive tasks, and should have no more than occasional interaction with the general public or with co-workers. (R. 26).

In determining Ms. Czibor's RFC, the ALJ followed a two-step process to determine whether the underlying medically determinable physical or mental impairments could reasonably be expected to produce the claimant's pain and other symptoms (R. 26). The ALJ found that Ms. Czibor's Crohn's disease, fibromyalgia, and depression were medically determinable impairments that could reasonably cause the alleged symptoms (R. 29). However, the ALJ also found that Ms. Czibor's statements about the intensity, persistence, and limiting effects of these symptoms were not credible to the extent they were inconsistent with the RFC (*Id.*).

With respect to Ms. Czibor's Crohn's disease, the ALJ found that the disease was "well controlled, having been effectively in remission for the past 10 years" (R. 30). The ALJ noted that Ms. Czibor "is not actively treating [sic] for this condition, is not taking medications for it and only seeks medical care when she has an episodic flare up" (*Id.*). As for Ms. Czibor's fibromyalgia, the ALJ stated Ms. Czibor has received various forms of treatment, which have been generally successful in controlling Ms. Czibor's symptoms (R. 30). The ALJ wrote that Ms. Czibor repeatedly reported to her doctors that her fibromyalgia had improved with medication and that she no longer took pain medication because the Lyrica helped her (*Id.*). Regarding Ms. Czibor's depression and anxiety, the ALJ noted that, although Ms. Czibor takes several medications for her mood disorders, the record reflects that she worked after the alleged onset date by managing online auctions on ebay (*Id.*). Although the ALJ did not find that Ms. Czibor's ebay work constituted disqualifying substantial gainful activity, the ALJ found that it indicated Ms. Czibor's daily activities have been greater than she reported (*Id.*). The ALJ also noted that if Ms. Czibor was experiencing the disabling

pain and dysfunction she described, she would not be able to "cook, clean, go out with friends, go to church and even play softball," as she stated in her testimony (*Id.*). The ALJ concluded by stating: "Although the record demonstrates that the claimant is partially credible in her allegation of pain and dysfunction, when considering the record as a whole, the undersigned [ALJ] cannot conclude that the claimant is disabled" (*Id.*).

At Step 4, the ALJ found Ms. Czibor cannot perform past work because it would be beyond her RFC (R. 31). At Step 5, the ALJ found that there are a significant number of jobs Ms. Czibor could perform in the national economy (R. 31). The ALJ relied on the VE's testimony that, given Ms. Czibor's age, education, past work experience, and limitations, Ms. Czibor could perform the following jobs: marker (6,000 jobs in the local economy); production assembly (3,100 jobs in the local economy); mail clerk (1,650 jobs in the local economy). Thus, the ALJ found Ms. Czibor not disabled as defined by the Social Security Act.

### III.

The standards for review of an appeal from the Social Security Administration denying disability benefits are well established. To establish a "disability" under the Social Security Act, a claimant must show an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). A claimant must demonstrate that her impairments prevent her from performing not only past work, but also any other work that exists in significant numbers in the national economy. *See* 42 U.S.C. § 423(d)(2)(A).

The regulations under the Social Security Act set forth a five-step process to determine whether a person is disabled. 20 C.F.R. § 404.1520(a)(4). Under these regulations, an ALJ must consider: (1) whether the claimant presently has substantial, gainful employment; (2) whether the claimant's alleged impairment or combination of alleged impairments is severe; (3) whether the claimant's impairment(s) meet(s) or equal(s) the specific impairments that are listed in the appendix to the regulations as severe enough to preclude gainful employment; (4) whether the claimant is unable to perform her past relevant work; and (5) whether the claimant is unable to perform any other work that exists in significant numbers in the national economy. *See* 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 404.1520(b)-(f); *see also Young v. Sec'y of Health and Human Serv.*, 957 F.2d 386, 389 (7th Cir. 1992).

A finding of disability requires an affirmative answer at either Step 3 or Step 5. *See* 20 C.F.R. § 404.1520(a)(4). A negative answer at any step other than Step 3 precludes a finding that the claimant is disabled. *Young*, 957 F.2d at 388. The claimant bears the burden of proof at Steps 1-4. In cases of severe impairment, the ALJ's analysis typically involves an evaluation of the claimant's residual functional capacity ("RFC") to perform past relevant work. *See* 20 C.F.R. § 404.1520(e). This RFC is used for purposes of Step 4 to determine whether the claimant may work in her previous occupations. *Id.*

At Step 5, the burden shifts to the Commissioner, who must "provid[e] evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [her] residual functional capacity and vocational factors." 20 C.F.R. § 404.1560(c)(2). If a claimant's RFC allows him to perform jobs that exist in significant numbers in the national economy, then the claimant is not disabled. 20 C.F.R. § 404.1520(g)(1).

In reviewing the ALJ's decision and use of the five-step process, courts may not decide facts anew, reweigh evidence, or substitute their judgment for the articulated judgment of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). The reviewing court will uphold the Commissioner's decision if it is supported by "substantial evidence," and is free of legal error. 42 U.S.C. § 405(g) (2004); *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Dray v. R.R. Retirement Bd.,* 10 F.3d 1306, 1310 (7th Cir. 1993) (quoting *Richardson v. Perales,* 402 U.S. 389, 401 (1971)). If conflicting evidence would allow reasonable minds to differ, the responsibility to determine disability belongs to the Commissioner (and ALJ, by extension), not the courts. *See Heir v. Sullivan,* 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan,* 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to evidence that the ALJ finds more credible).

That said, an ALJ is not entitled to unlimited judicial deference. An ALJ must "build an accurate and logical bridge from the evidence to [his or] her conclusion," *Dixon v. Massanari,* 270 F.3d 1171, 1176 (7th Cir. 2001), and "must confront the evidence that does not support his [or her] conclusion and explain why it was rejected." *Indoranto v. Barnhart,* 374 F.3d 470, 474 (7th Cir. 2004). The ALJ must consider all relevant evidence, and may not choose to disregard certain evidence or discuss only the evidence that favors his or her decision. *See Herron,* 19 F.3d at 334. Although the ALJ need not evaluate in writing every piece of evidence in the record, the ALJ must state the reasons he or she accepted or rejected "entire lines of evidence." *Id.* at 333; *see also Young,* 957 F.2d at 393 (in order for there to be a meaningful appellate review, the ALJ must articulate a reason for rejecting evidence "within reasonable limits"). The written decision must include specific

reasons that explain the ALJ's decision, so that the reviewing court can ultimately assess whether the determination was supported by substantial evidence or was "patently wrong." *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (quoting *Powers v. Apfel*, 207 F.3d 431, 435 (7th Cir. 2000)).

## IV.

Ms. Czibor attacks the ALJ's opinion on many fronts. *First*, she claims that ALJ failed to fully and fairly develop the record, especially as to Ms. Czibor's Crohn's disease and Reynaud's disease (Pl.'s Mem. at 10-11). *Second*, she claims that the ALJ erred by finding that Ms. Czibor did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (Pl.'s Mem. at 10-11). *Third*, Ms. Czibor claims that the ALJ erred in failing to consider all the problems and symptoms affecting her RFC (Pl.'s Mem. at 13-14).

## A.

The Court first addresses Ms. Czibor's contention that the ALJ failed to fully and fairly develop the record. In particular, Ms. Czibor takes issue with the complete absence of any medical records from her gastrointestinal specialist, Dr. Geetha Dodda, who treated her for Crohn's disease and Raynaud's disease.

In a Social Security hearing, the ALJ has a duty to develop a full and fair record. *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000). When a claimant is unrepresented by counsel, the ALJ's duty is enhanced; she must "scrupulously and conscientiously [] probe into, inquire of, and explore for all the relevant facts . . . ." *Thomas v. Sullivan*, 933 F. 2d 581, 587 (7th Cir. 1991) (internal citations and quotations omitted). Although *pro se* claimants must furnish some medical evidence

to support their claim, the ALJ is required to supplement the record, as necessary, by asking detailed question, ordering additional examinations, and contacting treating physicians and medical sources to request additional records. 20 C.F.R. §§ 416.912(d)-(f); *Nelms v. Astrue*, 553 F.3d 1039, 1098 (7th Cir. 2009) (remanding for failure to develop record where ALJ failed to consider three-years worth of medical records that were relevant to impairment).

Where a claimant seeking judicial review argues that the ALJ failed to fully and fairly development the record, a court will remand only if the claimant can demonstrate that she was prejudiced by the ALJ's failure to develop the record. To establish prejudice, the claimant must point to specific facts that the ALJ did not consider and show that those facts would have been relevant to the ALJ's determination. *Nelms*, 553 F.3d at 1098. "Mere conjecture or speculation that additional evidence might have been obtained in the case is insufficient . . . ." *Binon v. Shalala*, 13 F.3d 243, 246 (7th Cir. 1994) (remand denied where claimant failed to identify specific facts or new medical evidence that were not brought out during the hearing). Where a claimant complains of an ALJ's insufficient development of the record in general terms, without specifically identifying what evidence went missing, the claimant's request for remand should be denied. *Nelson v. Apfel*, 131 F.3d 1228, 1235 (7th. 1997) (denying remand, despite ALJ's "marginal hearing," because claimant failed to identify omitted relevant facts with sufficient specificity).

In this case, Ms. Czibor claimed disability based on a number of impairments, one of which was Crohn's disease. During the hearing, when asked if there were any records missing from the ALJ's file, Ms Czibor stated that records from her gastrointestinal specialist–who treated her for any Crohn's related issues–appeared to be missing. The following exchange took place:

ALJ: Okay. So who's the doctor that we're missing records from?

13

| | |
|---|---|
| Claimant: | Dr. Dodda. |

          \*   \*   \*

| | |
|---|---|
| ALJ: | Okay. And what does she treat you for? |
| Claimant: | She's my GI specialist. So I know she would have been on the list because I think I must have had 24 doctors for the Government to contact and I'm sure she would've been up at the top, but she's treated me for the GI complaints for the Crohn's disease. |
| ALJ: | For the Crohn's disease? |
| Claimant: | Right. |

(R. 50-51). The ALJ stated at the hearing that she would obtain records from Dr. Dodda (R. 91). On September 16, 2010, the Office of Disability Adjudication and Review sent a letter requesting records to Associate Gastroenterology (where Dr. Dodda practiced) (R. 444). That letter was returned with an unsigned handwritten note stating: "Please refer this request to the patient's family Dr. to obtain records. Thank you!" (R. 445). There is no indication that the Office of Disability Adjudication and Review followed-up with that request. Therefore, the records were not included in the ALJ's file when she made her determination.

Ms. Czibor argues that the Dodda records were relevant to her disability claim, and that the ALJ's failure to obtain them constituted a violation of the ALJ's duty to fully and fairly develop the record. The Court agrees. Although Ms. Czibor presented evidence of several different impairments, it is clear that her Crohn's disease was of central importance: it was a major topic of testimony at the September 13, 2010 hearing and was also discussed at length in the ALJ's written opinion. The ALJ's ultimate conclusion regarding Ms. Czibor's alleged disability rested on a preliminary finding that Ms. Czibor's Crohn's disease was "well controlled" and "effectively in

14

remission" (R. 30). The ALJ relied on a Bureau of Disability Determination Services Internal Medicine Consultative Examination describing Ms. Czibor's experience with Crohn's disease as follows: "She had multiple bowel surgeries as well as colostomy during the time of active disease and has been in remission of Crohn's disease for the past 10 years. She is currently off of all medications and has not had any hospitalizations or exacerbations since 1999." (R. 382). At the hearing, the ALJ asked Ms. Czibor if her Crohn's was in remission and Ms. Czibor responded by testifying that "technically there isn't remission and technically it never goes away" (R. 63). Ms. Czibor went on to describe the Crohn's related symptoms she continues to experience (R. 64-68). The ALJ ultimately found that Ms. Czibor's testimony was not credible to the extent it conflicted with the RFC (R. 29). The problem, however, is that the ALJ did not consider records from the doctor that actually treated Ms. Czibor's Crohn's disease. We find that those records would have been relevant to the ALJ's consideration of that impairment.

The Commissioner argues that the ALJ's attempt to obtain the Dodda records was sufficient to satisfy the agency's obligation. The Commissioner fails to cite any authority in support of that contention, and our own review of relevant regulations reveals that the argument must be rejected. To fulfill their duty to develop the record, ALJs must compile the claimant's "complete medical history" and make "every reasonable effort" to help obtain the necessary medical reports. 20 C.F.R. § 404.1512(d). Reasonable efforts to obtain such records include an initial request for the medical records and, if the ALJ does not receive the requested records, one follow-up request. 20 C.F.R. § 404.1512(d) (1). If the evidence the ALJ receives is insufficient, the ALJ must contact medical sources for additional information. 20 C.F.R. § 404.1512(e).

Here, the ALJ sent one letter requesting records to Associate Gastroenterology (where Dr. Dodda practiced) (R. 444). That letter was returned with an unsigned handwritten note stating: "Please refer this request to the patient's family Dr. to obtain records. Thank you!" (R. 445). There is no indication that the ALJ followed-up with that request. According, it cannot be said that the ALJ made "every reasonable effort" to obtain the necessary records, and remand is appropriate.

Finally, we note that although Ms. Czibor failed to provide us with a copy of the Dodda records, remand is still appropriate. As discussed above, the Seventh Circuit has instructed that claimants seeking to demonstrate an ALJ's insufficient development of the record must specifically identify the relevant facts they contend were missing from the record. Claimants may, of course, make that identification by attaching the missing medical records for a court's consideration. *Nelms*, 553 F.3d at 1098 (claimant who sought judicial review of ALJ's decision filed appendix of medical records for the limited purpose of establishing prejudice). In this case, Ms. Czibor did not make the Dodda records available to the Court, but she has identified the records with enough specificity for us to assess their relevance. The hearing transcript makes clear that Dr. Dodda was Ms. Czibor's gastroenterologist, and, as such, she served as the primary care giver for Ms. Czibor's Crohn's disease. Because much of the ALJ's determination in the case relates to Crohn's as an impairment, the Dodda records should have been considered.[1]

---

[1] Because we remand on this ground, we find it unnecessary to reach Plaintiff's other challenges. On remand, of course, the ALJ is free to revisit findings that she made in light of additional evidence that is developed – whether from the Dodda records or from other sources. On that score, we note that the ALJ will be free to consider the additional evidence that plaintiff submitted to the Appeals Council (R. 481-533), that the ALJ did not have before her in making the determination that Ms. Czibor is not disabled.

## CONCLUSION

We recognize the burden imposed on ALJs by the overwhelming case loads that they confront on a daily basis. However, that burden does not authorize ALJs to do less than the law requires in developing a record that will lead to the fair adjudication of a person's disability claim. In remanding here, we do not in any way suggest what outcome the ALJ should reach. We only require that whatever the outcome, it must be based on a more fully developed record.

This Court directs the Clerk of the Court to enter judgment granting Ms. Czibor's motion for summary remand (doc. # 12), and deny the Commissioner's cross-motion (doc. # 14). The case is terminated.

**ENTER:**

**SIDNEY I. SCHENKIER**
**United States Magistrate Judge**

**Dated: September 20, 2012**